## Case No. 9,365.

### In re MEAD.

[19 N. B. R. 81; [1] 2 N. J. Law J. 26.]

District Court, D. New Jersey, Oct. Term, 1878.

BANKRUPTCY — FRAUDULENT CONVEYANCE — PURCHASER WITH KNOWLEDGE OF FRAUD—IMPROVEMENTS—INCUMBRANCES PAID.

One who, with notice of the fraud, purchases property fraudulently conveyed by a bankrupt, has no right, after being compelled to surrender it to the assignee, to reimbursement either for improvements upon the premises or for moneys advanced to reduce incumbrances.

On petition to expunge claim of Edmund Mead.

NIXON, District Judge. The assignee of Peter Mead, bankrupt, filed a bill in this court, some years ago, to set aside, as fraudulent and void against creditors, a conveyance of real estate made by said Mead and wife to one Temperance Berry. The claimant in this case was one of the defendants in that suit, filing a separate answer and contesting the assignee's right to recover. The decree of the court was that the sale was fraudulent and void, and that the claimant, who was a purchaser of the premises of the bankrupt's grantee, had sufficient notice of the fraud to put him upon inquiry, and that, although he may have paid full value, he took the property subject to the right of the creditors of Peter Mead to be paid their debts.

The testimony in these proceedings disclose the fact that when Peter Mead transferred the premises to Berry they were incumbered with two mortgages; one to a Mr. Bonnell, to secure the payment of five hundred dollars, and the other to a Mr. Whitty, for two thousand dollars, and that Berry paid off the latter in the month of October, 1868, while the property was held by his wife. He did not cancel the mortgage, however, but caused it to be assigned to one Alfred Berry, who says that he was ignorant of the transaction at the time and paid nothing on the mortgage. There seems to be some confusion in the testimony whether the Bonnell mortgage was paid by Berry before the execution of the agreement to sell the property to the claimant on the 19th of May, 1869, or with the five hundred dollars that Edmund Mead advanced on the delivery of the said agreement. But it is a matter of small consequence whether the mortgages were in fact paid by Edmund Mead or by Berry. In either case the person paying has no claim upon the estate of Peter Mead, as against his creditors, to have the amount refunded. The court has already decided that the transfer to Berry was a fraud and that Edmund Mead had cause to know that the fraud was being perpetrated upon the creditors of Peter Mead.

Under these circumstances he purchased the property at his peril, and when, after a long litigation, he was compelled to surrender it to the assignee, there does not remain in him any claim either for improvements upon the premises or for reduction of incumbrances. The case falls within the rulings of the supreme court in Railroad Co. v. Soutter, 13 Wall. [80 U. S.] 517, and there must be an order entered expunging the claim.

---

MEAD (CUMMINGS v.). See Case No. 3,476.

---

## Case No. 9,366.

### MEAD v. NATIONAL BANK OF FAYETTEVILLE.

[6 Blatchf. 180; 2 N. B. R. 173 (Quarto, 65); 7 Am. Law Reg. (N. S.) 818; 1 Am. Law T. Rep. Bankr. 108; 15 Pittsb. Leg. J. 137.] [1]

Circuit Court, N. D. New York. Sept. 21, 1868.

BANKRUPTCY—PARTNERSHIP—NOTES ENDORSED INDIVIDUALLY—JOINT AND SEPARATE ESTATES —ENGLISH RULE OF ELECTION.

1. Where a creditor, to whom a debt was due by a copartnership composed of three persons, took, for a part of it, the note of the copartnership endorsed by one of the copartners, and for other parts of it, severally, three notes, each made by one of the copartners, and endorsed by the two copartners other than its maker, and afterwards the copartners were adjudged bankrupts, and the creditor proved his debts against the makers alone of the four notes: *Held*, that he was entitled to dividends, according to such proofs, out of the several estates, joint or separate, against which the proofs were made.

[Cited in Re Bigelow, Case No. 1,397; Re Bradley, Id. 1,772; Emery v. Canal Nat. Bank, Id. 4,446; Re Long, Id. 8,476; Re Thomas, Id. 13,886.]

[Cited in Winslow v. Wallace, 116 Ind. 321, 17 N. E. 923; Ex parte Nason, 70 Me. 367.]

2. The copartners, in respect to the notes made or endorsed by them individually, were accommodation makers or endorsers for the copartnership, which, as between the copartners, and in equity, was the principal debtor.

3. There is nothing in the 36th section of the bankruptcy act of March 2, 1867, (14 Stat. 534,) which, in terms, prohibits such creditor from proving his debts, and taking dividends, against the joint and separate estates of his debtors, in virtue of their joint and several liabilities respectively, he being a legal creditor of the individual copartners in respect to the notes bearing their individual names either as makers or endorsers.

[Cited in Re Bigelow, Case No. 1,397.]

4. It is the doctrine of the English court of chancery, that, in bankruptcy, a creditor who has knowingly taken both the copartnership and the individual obligation of his debtors for the same debt, must elect whether he will prove his debt against the joint estate or the separate estate of his debtors.

[Cited in Re Tesson, Case No. 13,844; Re Bigelow, Id. 1,397; Re Foot, Id. 4,906; Re Vetterlein, 20 Fed. 110.]

[Cited in Roger Williams Nat. Bank v. Hall, 160 Mass. 171, 35 N. E. 666.]

---

[1] [Reprinted from 19 N. B. R. 81, by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 1 Am. Law T. Rep. Bankr. 108, contains only a partial report.]